UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


MICHAEL SHAUN SCHAFFRAN                                    PLAINTIFF

V.                                    CIVIL ACTION NO: 1:24CV8

HARRISON COUNTY, MISSISSIPPI                              DEFENDANT

_____

TRANSCRIPT OF OMNIBUS HEARING

BEFORE HONORABLE ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE

AUGUST 12, 2024

DAN M. RUSSELL, JR., UNITED STATES COURTHOUSE
GULFPORT, MISSISSIPPI
_____


COURT REPORTER:

Kati Vogt, RPR, RMR, RDR, CRR
Official Court Reporter
U.S. District Court, Southern District of Mississippi
2012 15th Street, Suite 403
Gulfport, Mississippi  39501
(228) 563-1780
kati_vogt@mssd.uscourts.gov


EXHIBIT "A"

1                    A P P E A R A N C E S

2

3    REPRESENTING THE PLAINTIFF:

4        MICHAEL SHAUN SCHAFFRAN, PLAINTIFF PRO SE

5

6

7

8    REPRESENTING THE DEFENDANT:

9        PATRICK TAYLOR GUILD, ESQ.
         Boyce Holleman and Associates, P.A.
10       1720 23rd Avenue
         Gulfport, Mississippi  39501
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT "A"

1          **THE COURT:**  Please be seated.

2          All right.  We're here in the matter of Schaffran

3    versus Harrison County, Mississippi, Cause Number 1:24CV8.

4    This matter is set for an omnibus hearing.

5          Good morning, Mr. Schaffran.  Is that right?

6          **THE PLAINTIFF:**  Yes, sir.

7          **THE COURT:**  Okay.  Good morning, Mr. Guild.

8    Mr. Guild, why don't you introduce yourself for the record

9    along with your client.

10         **MR. GUILD:**  Yes, Your Honor.  Patrick Guild here on

11   behalf of Harrison County, Mississippi.

12         **THE COURT:**  Thank you.

13         All right.  Mr. Schaffran, I've asked you to join us

14   here as a result of a lawsuit you have filed.  We're going to

15   go over your entire lawsuit.  Have you ever been to a

16   screening hearing or a Spears hearing such as this before?

17         **THE PLAINTIFF:**  No, sir.

18         **THE COURT:**  All right.  Well, rest easy.  I'm going

19   to explain it to you.  You're proceeding in this matter

20   without payment of costs.  That's what we call IFP or in forma

21   pauperis.  You requested to proceed that way, and that's been

22   granted to you by the Court.  That makes your case fall under

23   the Prison Litigation Reform Act, and that requires the Court

24   to screen your case.  The statute is a little broad, but what

25   we're supposed to be doing this morning is to determine

EXHIBIT "A"

1    whether you've stated a claim for relief under 42 USC

2    Section 1983.  What that means in layman's terms is we're

3    trying to find out about the law and the facts of your case.

4    You can have the law absolutely perfect on your side, but you

5    might not have enough facts.  Conversely, you might not have

6    the law, but you have the facts that are perfect on your case.

7    And so we're trying to determine whether you have enough law

8    and facts on your case that will allow you to proceed to the

9    next step.  That's what we're going to do here today.  Okay?

10            **THE PLAINTIFF:**  Okay.

11            **THE COURT:**  In order to screen your case, I first

12    consider what you've said in your complaint, but sometimes, as

13    you can imagine, the complaints are not absolutely clear.  So

14    what I like to do is to bring the plaintiffs, such as

15    yourself, into open court and give you an opportunity to tell

16    me in your own words what your lawsuit is about; in other

17    words, what you think each defendant has to do with your

18    lawsuit, why you've sued them, what constitutional rights you

19    think that they've violated, what your damages are, things

20    such as that, and I listen to what you have to say and I take

21    that into consideration along with what you've put into your

22    complaint, and then I come up with a determination of whether

23    you have sufficient law and sufficient facts to allow your

24    lawsuit to proceed.

25            Now, we're going to talk about some things, some

EXHIBIT "A"

1    procedural things of your case that you may or may not be

2    aware of.  Since I'm required to consider what you have to say

3    as a supplement to your complaint but not an actual amendment

4    to your complaint, everything you tell me this morning should

5    be under oath; so at this time I want you to stand, raise your

6    right hand, and take the oath from the courtroom deputy.

7         **(Oath administered.)**

8              **THE COURT:**  All right.  So first of all,

9    Mr. Schaffran, you have a decision to make.  And the decision

10   that you have to make is whether you want the district judge

11   to hear your case or whether you want the magistrate judge to

12   hear your case.  Now, I'm the magistrate judge assigned to

13   your case.  Judge McNeel, Taylor McNeel, is the district judge

14   assigned to your case.  Insofar as you're concerned, there's

15   very little difference between the judges.  The rules of

16   evidence are going to be applied the same whether the district

17   judge hears it or the magistrate judge.  The rules of court,

18   the Rules of Civil Procedure will be applied the same

19   regardless of who the judge is, and your right to appeal is

20   the same regardless of the judge, the only difference being

21   that sometimes the magistrate judge can get to your case a

22   little quicker than the district judge.  All right?

23              Like I said, I'm the magistrate judge assigned to the

24   case.  I can assure it makes no difference to Judge McNeel and

25   it makes no difference to me which judge you pick.  It's not

EXHIBIT "A"

1    going to adversely affect the outcome of your case.  You're

2    not going to anger either one of us.  We both have plenty of

3    cases to do.

4            So do you have any questions about the consent

5    process?

6            THE PLAINTIFF:  No.

7            THE COURT:  All right.  Do you want to have District

8    Judge McNeel decide your case, or do you want to have me as

9    the magistrate judge assigned to your case?

10           THE PLAINTIFF:  You.

11           THE COURT:  Okay.  And you have that right to do

12   that.  The law says that the consent, because you have to

13   consent to have the magistrate judge hear the case, it has to

14   be in writing, so we have a form for that.

15           THE PLAINTIFF:  Okay.

16           THE COURT:  So the courtroom deputy is going to bring

17   you that form.  I want you to review it and make sure you

18   understand it before you read and sign it.  But basically it

19   says you're not waiving any rights; you're just allowing the

20   magistrate judge to hear your case.  Okay, Mr. Schaffran?

21           THE PLAINTIFF:  Yeah.

22           THE COURT:  And if you've read it and you understand

23   it, then you can go ahead and sign it and date it where

24   appropriate.

25           THE PLAINTIFF:  To be honest with you, Your Honor, I

EXHIBIT "A"

1   wasn't even told this is where I was coming, so I didn't bring

2   my glasses, I didn't bring my paperwork.  They just told me,

3   "You've got court."  So I can't -- I can't really see what

4   this says.

5            **THE COURT:**  Okay.

6            **THE PLAINTIFF:**  But I trust that it -- so, you know,

7   if she can point out where I'm supposed to sign, I'll sign it.

8        **(Form read to plaintiff by courtroom deputy clerk.)**

9            **THE COURT:**  Thank you for reading the form to him.

10           **THE PLAINTIFF:**  Yeah.

11           **THE COURT:**  Does Harrison County consent?

12           **MR. GUILD:**  Yes, Your Honor.

13           **THE COURT:**  All right.  Thank you.  Please go ahead

14   and sign the consent.

15           All right.  Mr. Schaffran, I've looked over your

16   complaint, but I'm hoping you can save us a little bit of time

17   this morning by telling me in your own words what your lawsuit

18   is about, like we talked about, why you sued Harrison County,

19   what rights you think they've violated -- you don't have to

20   name the specific rights -- and what your damages are.  You

21   don't have to go into minute detail, but I'm going to ask you

22   some questions to kind of lead you through this process.  I

23   want to make sure, though, before I leave here this morning

24   that I have a very good understanding of what your lawsuit is

25   about, okay?  And once I get through asking questions, it may

EXHIBIT "A"

1    be that the lawyer for Harrison County, he may have some

2    questions to ask you, and I want you to extend to him, and I

3    know you will, the same courtesies that you're extending to

4    the Court.

5            So why don't we start off with some easy questions.

6    State your name and your age.

7            **THE PLAINTIFF:**  Michael Shaun Schaffran, 45.

8            **THE COURT:**  And where are you currently housed?

9            **THE PLAINTIFF:**  At the Harrison County Adult

10   Detention Center.

11           **THE COURT:**  Why are you housed there?

12           **THE PLAINTIFF:**  For alleged armed robbery.

13           **THE COURT:**  Have you gone to trial yet?

14           **THE DEFENDANT:**  No, sir.

15           **THE COURT:**  When is your trial date?

16           **THE PLAINTIFF:**  I have no trial date yet.

17           **THE COURT:**  Okay.  And how long have you been housed

18   at Harrison County?

19           **THE PLAINTIFF:**  Thirteen months.

20           **THE COURT:**  And that's been continuous?

21           **THE PLAINTIFF:**  Yes, sir.

22           **THE COURT:**  As I appreciate it, you have brought what

23   we call a conditions of confinement claim against Harrison

24   County that relates to the presence of black mold.  Is that

25   right?

EXHIBIT "A"

1          **THE PLAINTIFF:**  Yes, sir.

2          **THE COURT:**  Do you have any claims other than what we

3    call conditions of confinement relating to black mold?

4          **THE PLAINTIFF:**  No.  It's just about that -- that

5    particular event that's been ongoing, particularly mostly in

6    one zone of the building I'm housed into.  But as soon as I

7    had started on this, they have moved me to a different zone.

8          **THE COURT:**  All right.  I guess what I want to make

9    certain is, do you have any other claims or theories of

10   recovery other than conditions of confinement relating to the

11   presence of black mold?

12         **THE PLAINTIFF:**  No.

13         **THE COURT:**  Okay.  And I read in your complaint, I

14   think, 144, 148, those numbers.  Where are you currently

15   housed in Harrison County?

16         **THE PLAINTIFF:**  Now I'm in B Building, A Zone.

17         **THE COURT:**  All right.  Do you have a cell number or

18   anything?

19         **THE PLAINTIFF:**  Yeah.  207.

20         **THE COURT:**  207.  And how long have you been in B

21   Building, A Zone, Cell 207?

22         **THE PLAINTIFF:**  Three months.

23         **THE COURT:**  Three months?  Okay.  And prior to that,

24   where were you?

25         **THE PLAINTIFF:**  B-F.

EXHIBIT "A"

1          **THE COURT:**  So B Building, F Zone?

2          **THE PLAINTIFF:**  Yes, sir.

3          **THE COURT:**  And do you remember what cell?

4          **THE PLAINTIFF:**  Yeah.  148, 248, 246, 245, and trying

5     to, you know, just find different ways to get -- to clean, and

6     it would just come right back, you know.  It's not just

7     inmates getting sick.  It's staff, too.  It's nurses, you

8     know, and it's like -- so...

9          **THE COURT:**  So prior to being in the F Zone in

10    Building B, were you in a different area?

11         **THE PLAINTIFF:**  That and lockdown.  That's it.

12         **THE COURT:**  Okay.

13         **THE PLAINTIFF:**  But in that building, you know.

14         **THE COURT:**  So obviously you're talking about black

15    mold, do you have any black mold currently in Building B, A

16    Zone, Cell 207?

17         **THE PLAINTIFF:**  No, sir.

18         **THE COURT:**  All right.  So when was the last time you

19    were exposed to the black mold?

20         **THE PLAINTIFF:**  About three months ago.

21         **THE COURT:**  And was that when you were F Zone?

22         **THE PLAINTIFF:**  Yes.

23         **THE COURT:**  All right.  And where was the black mold?

24    Was it in each one of these cells?

25         **THE PLAINTIFF:**  Yeah, it, like, comes out of the

EXHIBIT "A"

1   vents, the window area, you know.  It's, like, on the ceiling.

2   And they came in to clean it and threw bleach powder, and it

3   just came right back through the bleach powder.

4         **THE COURT:**  Who came in to clean it?

5         **THE PLAINTIFF:**  A maintenance crew.

6         **THE COURT:**  When did the maintenance crew clean it,

7   if you remember?

8         **THE PLAINTIFF:**  I don't know exactly when, but it

9   was, like, about the beginning of me filing all the paperwork.

10        **THE COURT:**  And it looks like your complaint was

11  filed in January of this year.

12        **THE PLAINTIFF:**  This was probably about February.

13        **THE COURT:**  So February of '24?

14        **THE PLAINTIFF:**  Yes, sir.

15        **THE COURT:**  So they came in and cleaned it, or tried

16  to, in February of '24 with bleach powder?

17        **THE PLAINTIFF:**  Yeah, inside -- and they had a little

18  pump sprayer and like a little toilet brush.

19        **THE COURT:**  All right.  So they came in with a pump

20  sprayer and toilet brush?

21        **THE PLAINTIFF:**  Yeah.

22        **THE COURT:**  And they were scrubbing it?

23        **THE PLAINTIFF:**  Right.  And if you go to B-F on the

24  upstairs by the window or on the bottom by the window, you

25  would -- you could see it, because it's still -- still there,

EXHIBIT "A"

1    you know, like, so...

2         **THE COURT:**  Was this the only occasion that they

3    attempted to clean the mildew or the mold?

4         **THE PLAINTIFF:**  Yes.  Just one time.

5         **THE COURT:**  Does the jail provide with you cleaning

6    products from time to time?

7         **THE PLAINTIFF:**  Yeah, they --

8         **THE COURT:**  Brushes and soap and --

9         **THE PLAINTIFF:**  With a mop bucket and a -- and a

10   broom and a little bucket with cleaner in it to clean your

11   toilet.  But that's...

12        **THE COURT:**  How often do they give you those cleaning

13   supplies?

14        **THE PLAINTIFF:**  Twice a week.

15        **THE COURT:**  Okay.  So are you able to mop and brush?

16   And you have a rag, I guess?  They give you a rag?  Or do you

17   have some --

18        **THE PLAINTIFF:**  You get a rag, yeah.  It's like the

19   only thing you get is your face towel, and they -- there's no

20   real way -- because, like, say this is the room right here

21   before you come in the door, and you look, you can see it just

22   like right across the wall.  And you'll wipe it, right, with a

23   cleaner, and then it will be right back the next day, you

24   know.  And everybody's -- I don't know.  It's like they try to

25   say, oh, we've got COVID or something.  It's not.  It's coming

EXHIBIT "A"

1    through the vents.  You know, you can smell like the mildew,

2    moisture, so...

3          **THE COURT:**  Has anybody told you why there's

4    the presence of mildew or moisture?

5          **THE PLAINTIFF:**  They say it's mildew coming from the

6    moisture and stuff.  But it's only in certain spots.  So that

7    -- and it's not like I'm saying, oh, whoa is me because I'm

8    locked up.  I'm locked up because I did something wrong.  It

9    ain't got nothing to do with that.  I'm not trying to get out

10   of anything that I've done or any of this stuff.  I'm just

11   saying that this right here is, like, you know, something

12   that's got people that are continuously sick.  And then you go

13   to medical and they charge you ten dollars every time, boom,

14   ten dollars every time.  You know, it's like...

15         **THE COURT:**  Do you have a history of sinus

16   infections?

17             **THE PLAINTIFF:**  No.

18         **THE COURT:**  What damages are you claiming in this

19   lawsuit?

20         **THE PLAINTIFF:**  Sometimes all of a sudden, like my

21   breath just gets taken away, like.  I feel like -- I don't

22   know if you've inhaled anything, like a piece of cake or

23   something got into your throat area and -- and it's just --

24   and then the sweats.  It's -- I went to medical about it, and

25   they're like -- and then talking about following up and, you

EXHIBIT "A"

1    know...

2         **THE COURT:**  Has any doctor or nurse or nurse

3    practitioner, any medical provider told you that the problems

4    you're having are caused by the presence of mold or mildew in

5    your cell?

6         **THE PLAINTIFF:**  No.  It seems like every time I talk

7    about it to the medical, they figure out a way to, you know,

8    detour the conversation into something else, and it's just --

9    you know, oh, we'll put you on -- they'll give me a Claritin,

10   like, and I'll take that for like seven to ten days, depending

11   on how long they put it there, and just...

12        **THE COURT:**  Does it help?

13        **THE PLAINTIFF:**  The Claritin?  I mean --

14        **THE COURT:**  Yes, sir.

15        **THE PLAINTIFF:**  -- not really.  I mean, because

16   it's -- it's -- I don't have a sinus infection.

17        **THE COURT:**  Well, you told me that you have like a --

18   I guess a tickle in your throat.

19        **THE PLAINTIFF:**  Yeah.

20        **THE COURT:**  What other symptoms, if any, are you

21   having other than that tickle in your throat?

22        **THE PLAINTIFF:**  Like sometimes I -- my breath gets

23   taken away.  Like, I don't know what it is.  It's just,

24   like...

25        **THE COURT:**  Okay.

EXHIBIT "A"

1    **THE PLAINTIFF:**  So, like, I don't know how to explain

2    it, really.

3    **THE COURT:**  Any symptoms other than your breath being

4    taken away and a tickle in your throat?

5    **THE PLAINTIFF:**  Sometimes headaches.  But I can't

6    actually say that that has to do with what I have put in this

7    complaint about, because I drink coffee, you know, and if I

8    don't have coffee, I'll have headaches.  So I can't really...

9    **THE COURT:**  We all get those as coffee drinkers, so I

10   understand how that is.

11   **THE PLAINTIFF:**  Yeah.

12   **THE COURT:**  When is the last time you saw anybody for

13   shortness of breath or breathing problems or a tickle in your

14   throat?

15   **THE PLAINTIFF:**  A little bit before they changed over

16   to this new, like, I guess in-house mailing system thing

17   called City Tele Coin.  So now, like, I don't know, the way

18   that the medical goes, it's kind of -- it's like you don't

19   know if they seen your message or not anymore.

20   **THE COURT:**  Okay.  Has anyone told you that it's not

21   black mold?

22   **THE PLAINTIFF:**  Yeah, maintenance did.  They said

23   that it was mildew.

24   **THE COURT:**  Did they give you a reason why they know

25   it's mildew and not black mold?

EXHIBIT "A"

1          **THE PLAINTIFF:**  No.

2          **THE COURT:**  Okay.  Do you have an understanding of

3     the difference between mildew and black mold?

4          **THE PLAINTIFF:**  I'm not, like, an expert on this, but

5     I have -- because I have done, like, construction with

6     demolition where there -- that type of stuff has been in

7     places that got condemned, you know, and -- but...

8          **THE COURT:**  But as far as looking at a fungus that's

9     black, do you know if there's a difference between mildew

10    versus black mold?

11         **THE PLAINTIFF:**  Well, for -- like from my

12    understanding, the difference is one would be clear and shiny;

13    the other would be, like, furry, like, you know, like a -- you

14    know, and it would start to overtake itself, you know, like --

15    I don't know how to say, stack maybe?  But...

16         **THE COURT:**  Okay.  So you think you can look at it

17    and tell the difference with the naked eye?

18         **THE PLAINTIFF:**  Well, first off, if I don't have my

19    glasses on, I can't see nothing at all.

20         **THE COURT:**  Well, with your glasses on.  Fair enough.

21    I'm with you.

22         **THE PLAINTIFF:**  But, you know, I would like to say

23    that I don't know how to answer that question.

24         **THE COURT:**  Okay.  So you may not know the difference

25    between mildew and black mold?

EXHIBIT "A"

1      **THE PLAINTIFF:**  Right.  But this is what makes me

2   figure there's a difference:  When there's the commotion about

3   it, you know.  Like if I talk about -- like say for instance

4   he's the builder of this microphone, right?  And I'm like,

5   "Oh, it ain't got the cotton thing on it," and Officer Edwards

6   is over there like, "Yeah, it does.  I can see it from here."

7   But because I can't see, you know, that's what I'm...

8      **THE COURT:**  Okay.  All right.  Anything else that we

9   need to talk about on your lawsuit that you've filed here

10  today?

11      **THE PLAINTIFF:**  Sir?

12      **THE COURT:**  Anything else that we've not talked about

13  that we need to talk about for your lawsuit today?

14      **THE PLAINTIFF:**  Well, yeah.  I want to -- on the

15  relief part, I put a million dollars, but that's not what I'm

16  trying to -- I was trying to get whatever it takes to

17  sandblast and kills and repaint the part, you know.  Because

18  there's inmate workers that have told me before that when they

19  did this, they were just told to spray over it.  You know what

20  I mean?

21      **THE COURT:**  Spray the paint over it?

22      **THE PLAINTIFF:**  Right.

23      **THE COURT:**  Okay.  So you want it clean so that you

24  don't have --

25      **THE PLAINTIFF:**  Right.

EXHIBIT "A"

1           **THE COURT:**  -- the presence of mildew and mold.

2           **THE PLAINTIFF:**  Right.

3           **THE COURT:**  All right.  Have we discussed all of your

4     claims that you're bringing here today?

5           **THE PLAINTIFF:**  Pretty much, yeah.

6           **THE COURT:**  Well, I want to make sure.  When you say

7     "pretty much," that means there might be something else.  And

8     I want to give you an opportunity to tell me about all of your

9     claims.  I mean, we've talked about the presence of mold or

10    mildew, and we've talked about you have a tickle in your

11    throat, sometimes you may have some breathing issue that you

12    attribute to it.  We've talked about what you want done if you

13    win and I can provide with you relief.  Is there anything

14    about your claim, any other claims we need to talk about that

15    you may be bringing other than mold or mildew?

16          **THE PLAINTIFF:**  No.  I'm just trying to see if I can

17    find a way to aid and assist in getting it fixed, you know, so

18    that way -- because like I said, it's not just the

19    inmates that -- you know, don't get me wrong, this might sound

20    bad when I say this, but some people deserve to be locked up.

21    You know what I'm saying?  And, you know, Romans 13:4 says the

22    sword is for the evildoer, you know.  But now we've got

23    officers that work there and medical that come in, and it's

24    just -- you know, it's like -- you know what I mean?  Just...

25          **THE COURT:**  All right.  Thank you.

EXHIBIT "A"

1          **THE PLAINTIFF:**  You're welcome.

2          **THE COURT:**  Counsel, do you have any questions?

3          **MR. GUILD:**  Yes, Your Honor, just a few, if I may.

4          **THE COURT:**  Go ahead.

5          **MR. GUILD:**  Mr. Schaffran, my name is Patrick Guild.

6    I represent Harrison County, Mississippi.  I appreciate your

7    want to getting the -- whatever problem there is resolved; but

8    I've got a few questions for you to make sure I understand

9    your claim.  Okay?

10          **THE PLAINTIFF:**  Yeah.

11          **MR. GUILD:**  You're claiming that you have been

12   exposed to hazardous and toxic conditions caused by black

13   mold; is that correct?

14          **THE PLAINTIFF:**  Yes, sir.

15          **MR. GUILD:**  And that you've been exposed to that over

16   several months of your incarceration; is that correct?

17          **THE PLAINTIFF:**  Yes, sir.

18          **MR. GUILD:**  And that this black mold was on or around

19   air vents inside air ducts, correct?

20          **THE PLAINTIFF:**  Yes.

21          **MR. GUILD:**  And that this black mold was in floor

22   areas and around pipes; is that correct?

23          **THE PLAINTIFF:**  Yes, sir.

24          **MR. GUILD:**  Okay.  And are you aware that the health

25   department had inspected the facility?

EXHIBIT "A"

1          **THE PLAINTIFF:**  I was told that they -- that those

2     are the people that said it was mildew.

3          **MR. GUILD:**  Okay.  So you're aware that they did come

4     inspect the building, correct?

5          **THE PLAINTIFF:**  Yes, sir.

6          **MR. GUILD:**  And you're aware that their findings were

7     that we had mildew, not black mold?

8          **THE PLAINTIFF:**  Yes, sir.

9          **MR. GUILD:**  Okay.  And do you have anything to

10    dispute their findings?

11         **THE PLAINTIFF:**  No, sir.  I mean, if that's what they

12    said, that's -- you know, that's what their job is to do.  You

13    know what I mean?  I can't dispute somebody with...

14         **MR. GUILD:**  No further questions, Judge.

15         **THE COURT:**  Okay.  I don't have any additional

16    questions.

17         Mr. Guild, do you have any prediscovery disclosures

18    to provide?

19         **MR. GUILD:**  Judge, this is a unique case in that it

20    really does not involve his medical, it doesn't really involve

21    his inmate records.  It just involves some mold issues.  I've

22    got pictures, Your Honor, that I can -- that I have of the

23    area, Bates-stamped 1 through 18, that I can provide him,

24    Judge.

25         **THE COURT:**  Well, you also referenced -- just to be

EXHIBIT "A"

1   fair, you referenced that there were Department of Health

2   inspections that said this was mildew and not mold.  I mean,

3   do you have that inspection report or inspection reports along

4   with the dates?

5           **MR. GUILD:**  I don't have that inspection report

6   today, Judge.  We've been trying to get it from Harrison

7   County Adult Detention Center.  Obviously we represent the

8   County, and -- but I don't have those today, but I'm happy to

9   supplement into --

10          **THE COURT:**  Has it been inspected more than one time?

11          **MR. GUILD:**  That I'm aware of, it gets inspected --

12   when I say "routinely," yearly.  Don't hold me to that

13   exactly, but at least yearly, and I'm happy to try to attempt

14   to get the relevant records to that.  But again, given what

15   was -- what we have here and based on -- I'm going to try

16   to -- first -- second time in 15 years, I'm going to try to

17   make a small argument before the Court before we close, if I

18   can, at a Spears hearing.

19          **THE COURT:**  Sure.

20          **MR. GUILD:**  We thought that the pictures from his

21   jail cell that were taken by personnel of the county are

22   really the only thing that --

23          **THE COURT:**  So you have pictures from just one jail

24   cell, or various jail cells?

25          **MR. GUILD:**  Judge, I believe it's the areas where he

EXHIBIT "A"

```
1      was confined at the time.  So his -- I do not know if they

2      were -- he claimed that he was in three jail cells, I believe,

3      or four in that three-month period.  Excuse me, prior to

4      that three-month period --

5              THE COURT:  Do you know which cell those pictures are

6      taken from, or cells?

7              MR. GUILD:  I do not.

8              THE COURT:  Okay.  You can produce them to

9      Mr. Schaffran.

10             MR. GUILD:  And, Judge, the digital -- the digital

11     copies are actually better.  If we have to proceed through

12     discovery, we'll provide him with actual digital copies.

13     Sometimes they're a little bit more clear than when they print

14     out the way that they do.

15             THE COURT:  Okay.  Mr. Schaffran, under the rules of

16     court that I mentioned to you earlier, the defendant has an

17     obligation under the rules to provide you with what we call

18     prediscovery disclosures.  And he's providing that to you

19     because that's what the rules say he must do.  There may be

20     some additional documents that we've referenced that he may be

21     required to produce to you as well.  Okay?

22             THE PLAINTIFF:  Yes, sir.

23             THE COURT:  So that's what that is.

24             Mr. Guild, you referenced that you may have an

25     argument you want to make before the Court?
```

EXHIBIT "A"

1        **MR. GUILD:**  Yes, Your Honor.  Again, this is the only

2    second time in probably 15 years that I'm making an argument

3    at Spears hearing, but I've got a case that I wanted to point

4    out to the Court.  It's called *Ruffin v. Larpenter*.  I've got

5    a printout of it because it's not reported in the federal

6    supplement.  It's 2019 WL 2526739.  I do have a copy for Your

7    Honor and for Mr. Schaffran.  But basically the allegation in

8    that claim was that during the incarceration over the past

9    several months, the plaintiff in that case had been exposed to

10   hazardous and toxic conditions caused by, but not limited to,

11   "black mold on and around air vents inside air ducts, shower

12   walls, and derins floors and crawlspaces and pipe chases where

13   toxic bacteria can grow," almost identical to the allegations

14   made here.

15        And in its review of that -- and this is taken during

16   the Spears hearing.  This was a Spears hearing report and

17   recommendation that was ultimately affirmed -- "Courts have

18   consistently held that the type of physical conditions

19   plaintiff alleges are nothing more than de minimis

20   inconveniences that do not constitute punishment or otherwise

21   rise to the level of constitutional violations.  Jurisprudence

22   has repeatedly held that the mere fact that mold is present in

23   a jail does not render an inmate's confinement

24   unconstitutional.  The mere fact that fungus, mold, mildew,

25   and rust are present in a jail does not warrant relief.

EXHIBIT "A"

1    Plaintiff's claim that the bathroom and shower area are

2    unsanitary and contain black mold fails to rise to the level

3    of a constitutional violation; holding that allegation of

4    excessive amount of black mold in showers and sinks was

5    insufficient to raise a claim for a constitutional violation."

6    And I'm quoting this where they have multiple citations.  I'm

7    leaving the citations out.  "Finding that plaintiff's

8    complaints of the presence of black mold in living areas,

9    eating areas, and shower areas were nothing more than a

10   de minimis level of imposition with which the Constitution is

11   not concerned.  Plaintiff's claim that he was forced to share

12   with other -- share a cell with other inmates is polluted and

13   covered with mold and fungus, causing him to catch athlete's

14   foot and ringworm, fails to rise to the level of a

15   constitutional violation." [As read.]  And so at the very end,

16   it states:  "Plaintiff's allegations, even if accepted as

17   true, fail to cross the impermissible line that separates the

18   unpleasant from the unconstitutional."  So this was done as a

19   Spears hearing.

20          I give you this case, Your Honor, because it quotes

21   all the other ones.  Instead of giving you a bunch of case

22   law, sometimes it's just easier to point to one that cites the

23   different instances.

24          **THE COURT:**  What court was that, Mr. Guild?

25          **MR. GUILD:**  That was the United States District

EXHIBIT "A"

1    Court, Eastern District of Louisiana.  It does cite a Southern

2    District of Mississippi case, which is *Eaton v. Magee*.

3    That's 2012 WL 2459398.  So this court has dealt with this

4    issue before.  I just -- like I said --

5            **THE COURT:**  Do you know who the magistrate judge was

6    in the Southern District of Mississippi?

7            **MR. GUILD:**  This one looks like it was -- it was

8    in 2012.  It would have been Judge Parker.

9            **THE COURT:**  Do you want to present that to --

10           **MR. GUILD:**  Sure.  Sure.

11           **THE COURT:**  -- the Court and Mr. Schaffran?

12           I think the safer course of action, Mr. Guild -- not

13   having read the case, and since this is a Spears hearing, I

14   think the safer course of action is to set a discovery period.

15           **MR. GUILD:**  Yes, Your Honor.

16           **THE COURT:**  And I think everyone can benefit by the

17   routine inspections, and let's see what they say.  It may be,

18   I don't know, but it may be that there's a distinction between

19   black mold.  I know sometimes individuals might see a black

20   fungus and assume that it's black mold, but to the Court,

21   black mold may have some significance as opposed to mildew.

22   I'd like to see the routine inspections.

23           And I want to give the plaintiff, Mr. Schaffran, an

24   opportunity to conduct discovery --

25           **MR. GUILD:**  Yes, sir.

EXHIBIT "A"

1          **THE COURT:**  -- to the extent, you know, he can avail

2    himself of discovery.  There may be facts that are pertinent

3    to the Court's analysis.

4          But it may be that you need to file a dispositive

5    motion.  And so I think what I'm going to do is I'm going to

6    set a 90-day period of discovery.  So all discovery will be

7    completed on or before November 12th, and then any and all

8    dispositive motions will be filed on or before December 12th.

9          What that means, Mr. Schaffran, is you need to -- he

10   gave you a copy of this case, so you may want to review that

11   case and any supporting cases.  I'm going to give you an

12   opportunity to conduct discovery, as provided by the rules.

13   And then it sound like Mr. Guild and Harrison County are going

14   to file dispositive motions -- a dispositive motion to

15   basically have the Court dismiss your claim.  Because this

16   goes back to where we talked about having the law and the

17   facts.  And you can have all the facts, but if you don't have

18   the law, then you may not be able to proceed.  And he's

19   apparently making an argument, based on this case that I have

20   not reviewed, that, okay, let's assume all your facts are

21   true, but the law doesn't support your theory of recovery.

22          **THE PLAINTIFF:**  Right.

23          **THE COURT:**  All right?

24          **THE PLAINTIFF:**  Yes, sir.

25          **THE COURT:**  And so that's where we are.  But I want

EXHIBIT "A"

1    to give you an opportunity to conduct discovery, if you care

2    to, and then he's going to file a motion.

3            Now, it is very important that you understand that it

4    is your responsibility and only your responsibility to keep

5    the court clerk advised of your mailing address.  So if you

6    get transferred or you're set free and you're back in the free

7    world, so to speak, you've got to keep the clerk advised of

8    your mailing address.  Because from time to time we may mail

9    orders, he may mail you a motion that requires some response,

10   and if you don't respond, then it could likely be that your

11   case will be dismissed.  So that's your responsibility if your

12   mailing address changes to keep the clerk advised of it at all

13   times.  Do you understand?

14          **THE PLAINTIFF:**  Yes, sir.

15          **THE COURT:**  Okay.  Mr. Guild, is there anything we

16   need to add on the record?

17          **MR. GUILD:**  No, Your Honor.  Just to make sure, are

18   you instructing us to go ahead and give the plaintiff those

19   reports upon -- once I have them?

20          **THE COURT:**  I think since you put that in there, and

21   it's an attachment to his complaint that there was an

22   inspection --

23          **MR. GUILD:**  Yes, Your Honor.

24          **THE COURT:**  -- I think under the prediscovery

25   disclosure rules, and it sounds like you may be attaching it

EXHIBIT "A"

1    as an exhibit to your motion, so you might as well go ahead

2    and give it to him now and let's flesh it out.

3         **MR. GUILD:**  Yes, sir, Your Honor.  We'll give it to

4    him within no later than 30 days.

5         **THE COURT:**  That will be fine.

6         **MR. GUILD:**  Yes, sir.

7         **THE COURT:**  Just make sure he has sufficient time to

8    conduct discovery if that's what he wants to do.

9         Mr. Schaffran, you had a question?

10         **THE PLAINTIFF:**  Yes, sir, Your Honor.  Have you seen

11    these pictures?

12         **THE COURT:**  I have not.

13         **THE PLAINTIFF:**  Is there any way I can get them, too,

14    so -- and then you won't be able to tell if nothing's going on

15    here.  But, you know, it's just --

16         **THE COURT:**  Well, I don't think I need to see them at

17    this juncture.

18         **THE PLAINTIFF:**  Yes, sir.

19         **THE COURT:**  But apparently when y'all are conducting

20    discovery and there's a motion filed and you have an

21    opportunity to address his motion and say why it's not true,

22    then I'm going to get to see it and review it all at that

23    time.  It wouldn't do me any good to see it right now, because

24    I'm not going to make any decisions today.

25         **THE PLAINTIFF:**  And not to say anything against him

EXHIBIT "A"

1   personally, but he's not the type to be able to look at this

2   and to know that it's incorrect as being able to see a cell

3   wall.

4           THE COURT:  Yeah.  Well, that's going to be something

5   y'all can argue about.  And then once y'all get it all written

6   up and everybody submits it to me, then that's when I'm going

7   to look at it and make a decision.

8           THE PLAINTIFF:  Yes, sir.

9           THE COURT:  So y'all may have some discovery to take.

10          THE PLAINTIFF:  Yes, Your Honor.

11          THE COURT:  Which is exactly why I'm going to allot

12  time for that.  Okay?

13          THE PLAINTIFF:  Yes, sir.

14          THE COURT:  Anything else you want to add on the

15  record before we close?

16          THE PLAINTIFF:  You have a good, safe day.

17          THE COURT:  All right.  You as well.  That will

18  conclude this matter.  Thank you.

19                      (Hearing concluded.)

20                          - - -

21

22

23

24

25

EXHIBIT "A"

1                    **CERTIFICATE OF COURT REPORTER**

2

3        I, Kati Vogt, RPR, RMR, RDR, CRR, Official Court Reporter

4    for the United States District Court for the Southern District

5    of Mississippi, appointed pursuant to the provisions of Title

6    28, United States Code, Section 753, do hereby certify that

7    the foregoing is a correct transcript of the proceedings

8    reported by me using the stenotype reporting method in

9    conjunction with computer-aided transcription, and that same

10   is a true and correct transcript to the best of my ability and

11   understanding.

12       I further certify that the transcript fees and format

13   comply with those prescribed by the Court and the Judicial

14   Conference of the United States.

15

16

17       s/Kati Vogt
         _____
         KATI VOGT, RPR, RMR, RDR, CRR
18       OFFICIAL COURT REPORTER

19

20

21

22

23

24

25

EXHIBIT "A"